HERBERT ST. CLAIR HEROY, RESPONDENT, v. ABBIE A. REILLY, ADMINISTRATRIX, APPELLANT.

Argued March 11, 1913—Decided June 18, 1913.

1. A written memorandum between the plaintiff and defendant's intestate, Reilly, recited that it was made as a correct statement of the transaction, and that in consideration of plaintiff's services in the negotiation of a lease from a third party to Reilly four years before and in relation to the premises, Reilly had promised to pay one-third of the profits on the sale, assignment or transfer of the lease—*Held*, that the memorandum on its face was not the original contract between the parties, but mere evidence of a con-tract theretofore made.

2. By agreement between lessor and lessee, the latter waived, quit-claimed and surrendered all right to a renewal of the lease, and all right by virtue thereof, and agreed to assign, sublease and put the lessor in full control, retaining the right to collect rents to the date of expiration of the lease. *Held*, that this was on its face a surrender and not a sale, assignment or transfer, and that if the form of surrender were adopted as a mere cover for what was really a sale for the purpose of defrauding a third party, that question if presented would not be for the court, but for the jury.

On appeal from the Supreme Court.

Robert B. Reilly in his lifetime, on January 23d, 1900, rented premises in New York from Emily J. De Forest, for a term of ten years. The lease provided that, if before the expiration of the term he had made additions and betterments as distinguished from repairs, which increased the value of the buildings at the expiration of the term by an amount in excess of $20,000, the lessor would upon request in writing grant a new lease for a further term of ten years, with like covenant for renewal. Reilly died before the expiration of the term. Abbie A. Reilly is his administratrix. He had expended $15,000 upon the buildings; whether it was all for improvements or some of it for repairs is a disputed question. There is no claim that the value of the buildings was increased to the amount of $20,000. The administratrix served a written request for renewal and subsequently on December 28th, 1909, entered into an agreement with Mrs. De Forest by which in consideration of $15,000, she withdrew her request and waived, quitclaimed and surrendered all right to a renewal and all right that the estate might have by virtue of the lease, and agreed to assign, sublease and put Mrs. De Forest in full control, retaining, however, the right to collect rents to May 1st, 1910, the date of expiration of the lease, subject to an accounting and credit on account of the $15,000 agreed to be paid by Mrs. De Forest. This agreement recites that Mrs. Reilly claimed that $15,000 had been expended by way of improvements, additions and betterments.

The present litigation grows out of an agreement between Robert B. Reilly and the plaintiff by which Reilly agreed that upon the sale, assignment or transfer of the lease above mentioned, he would pay Heroy one-third of the net profit from such sale or transfer, the sum to be ascertained after deducting the cost of all improvements made by Reilly from the consideration paid and actually received for the sale or transfer. The plaintiff's claim is that the arrangement between Mrs. De Forest and Mrs. Reilly was a sale or transfer within the meaning of his agreement, and that the profits were to

be ascertained by deducting from the $15,000 paid by Mrs. De Forest the amount expended by Reilly for improvements.

The agreement between Heroy and Reilly is evidenced by a written memorandum dated June 7th, 1904, which recites that it is made as a correct statement of the transaction, and also the fact of the lease from De Forest to Reilly, and that in consideration of Heroy's services in the negotiation for the lease and in relation to the premises, Reilly has promised to pay one-third of the profits conditionally upon the sale, assignment or transfer.

The learned trial judge told the jury that there was a sufficient consideration for the agreement between Heroy and Reilly; that it made no difference that the agreement between Mrs. Reilly and Mrs. De Forest contained the words "waive, quitclaim and surrender" instead of "sell, assign and transfer," provided the effect of the agreement was to turn over to Mrs. De Forest the balance of the term at a profit; that the question for the jury was whether or not the balance of the term was disposed of by Mrs. Reilly at a profit. The effect was to leave to the jury only the question of the amount of profit, if any. So the judge treated the case in the rest of his charge. There was a verdict for the plaintiff.

For the respondent, *George W. W. Porter* (*John A. Bernhard* on the brief).

For the appellant, *Arthur H. Bissell*.

The opinion of the court was delivered by

SWAYZE, J. The preliminary question is whether there was a valid consideration for the agreement between Heroy and Reilly. The point made is that the consideration was past—services already rendered. We think this point is not well taken. The memorandum on its face is not the original contract of the parties, but mere evidence of a contract theretofore made. It says that it is made "as a correct statement of the transaction," and that Reilly "has promised." That there

was a valid consideration for the original oral promise is not and cannot be questioned.

The next question is whether the condition upon which the money was to be paid has ever been fulfilled, that is whether there has been a sale, assignment or transfer of the lease. The question is really somewhat narrower. The judge took the question from the jury and assumed himself to determine that the agreement between Mrs. De Forest and Mrs. Reilly was a sale, assignment or transfer. In this he was clearly wrong. If the document alone is looked at—and the judge could look at nothing else in this case—it purports to be a "surrender." Blackstone defines a surrender as "a yielding up of an estate for life or years to him that hath the immediate reversion or remainder wherein the particular estate may merge or drown, by mutual agreement between them. It is done by these words, 'hath surrendered, granted, and yielded up.'" 2 Bl. Com. 326. The words used in the present case are "waived, quitclaimed and surrendered," but that is unimportant. "Any form of words by which the intention of the parties is sufficiently manifested, will operate as a surrender. Thus, if a lessee for years remise, release, discharge and forever quitclaim to the lessor, all his right, title and interest in or to such lands, it will be considered a surrender. Or if a lessee for life leases to the lessor for the life of the lessee, it will be equivalent to a surrender." Tayl. L. & T., § 510. To hold as the learned trial judge did, as matter of law that an instrument which the law considers a surrender is a sale or assignment or transfer, is to introduce unnecessary confusion into our legal terminology, and make it impossible for counsel by the use of the most accurate and technical terms to secure his client's rights against future misconstruction. If we are to encourage the accurate use of legal terms we must adhere to their recognized and settled meaning. The difference between a sale and surrender is fundamental. A sale involves a transfer of something that may still exist after the transfer, but when a lessee surrenders or transfers his estate for years to the owner of the immediate estate in reversion, or remainder, the estate for years at once

by operation of law merges in the reversion and no longer exists. A man cannot without doing violence to language be said to hold a lease of lands which he owns in fee-simple. In *Scott's Ex'rx* v. *Scott,* 18 *Gralt.* 150 (at *p.* 159), the court said: "A surrender differs from an assignment. An assignment of an estate for life or for years is a transfer of the whole interest of the assignor to some one other than the immediate reversioner, or remainderman holding an estate which is larger than that of the assignor. The estate assigned remains an estate distinct from that of the reversioner or remainderman, and vests in the assignee, who stands for most purposes, in the shoes of the assignor. But when the transfer of the whole interest in an estate for life or years is made, as in this case, to the person holding the immediate reversion or remainder in fee, the estate transferred is extinguished by merger and the transfer operates as a surrender." We do not mean to say that calling the document a surrender necessarily deprives the plaintiff of his right to compensation under the agreement of 1904. If the form of a surrender were adopted as a mere cover for what was really a sale, for the purpose of defrauding the plaintiff, a different question would be presented, but that question if presented would not be one for the court; it would depend upon inferences to be drawn from the evidence, and it is the province of the jury to draw those inferences. This error alone requires a reversal of the judgment, but since the case must be retried, we ought to call attention to a serious difficulty in the plaintiff's way. His right at best was to one-third of the profits on the sale of the lease, over and above the cost of the improvements. His case rests upon the theory that Mrs. Reilly received $15,000 which belonged to her, and in which he was entitled to share after deducting the cost of improvements. An examination of the surrender itself indicates that Mrs. Reilly secured the $15,000 by the representation that that sum had in fact been expended for improvements. The surrender so recites, and the fact that the consideration paid by Mrs. De Forest was that exact sum is a strong indication that Mrs. De Forest, although under no legal obligation to

renew the lease unless the property had been increased in value to the extent of $20,000, was willing to reimburse Mrs. Reilly for the amount actually spent for improvements. If this is the fact, Mrs. Reilly would have no right to retain the $15,000, unless that amount had in fact been spent for improvements. Mrs. De Forest could at least recover the excess over and above the amount actually expended. The plaintiff could not lawfully share in any profit obtained by misrepresentation. He seems to be in this position: if the representation on which Mrs. De Forest paid the money was true, nothing is coming to him because there is no profit under the terms of his agreement; if the representation was false, the excess of money belongs to Mrs. De Forest and not to Mrs. Reilly or the plaintiff.

It remains only to call attention to the error in excluding certain bills paid by Reilly, and claimed by the defendant, to show payments on account of improvements. A notation had been made thereon by the plaintiff, reading "Imp. a/c Heroy."

It was open to the jury to find that the notation indicated an admission by Heroy that the bills were for improvements. They should have been admitted in evidence.

The judgment must be reversed and a *venire de novo* awarded.

*For affirmance*—THE CHANCELLOR, TERHUNE, J. 2.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ. 13.